ROSNER NOCERA & RAGONE, LLP
110 Wall Street – 23rd Floor
New York, New York 10005
Attorneys for Plaintiff
Wachovia Bank, National Association
(212) 635-2244

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X     Case No. 08-cv-8681
WACHOVIA BANK, NATIONAL ASSOCIATION,                                       (LTS)
as Administrative Agent,

                              Plaintiff,

          -against-
                                                **COMPLAINT**

FOCUS KYLE GROUP, LLC, JOHN A. RITTER,
KB HOME NEVADA INC., KB HOME, LENNAR
COMMUNITIES NEVADA, LLC, LENNAR
CORPORATION, MTH-HOMES NEVADA, INC.,
MERITAGE HOMES CORPORATION, PN II, INC.,
PULTE HOMES, INC.,RYLAND HOMES NEVADA,
LLC, THE RYLAND GROUP, INC., COLEMAN-TOLL
LIMITED PARTNERSHIP, TOLL BROTHERS, INC.,
and ALAMEDA INVESTMENTS, LLC,

                              Defendants.
---------------------------------------------------------------------X

       Plaintiff, Wachovia Bank, National Association, as Administrative Agent (hereinafter "Wachovia" or "plaintiff"), by and through its attorneys, Rosner Nocera & Ragone, LLP, as and for its Complaint against the defendants, alleges as follows:

## **NATURE OF THE ACTION**

       1.     This action is brought to recover upon defendants' Completion Guaranties which require defendants to complete certain real estate improvements, and pay certain financial obligations, related to defaulted real estate acquisition and development loans arranged through Wachovia for non-party Kyle Acquisition Group, LLC ("Kyle"). Kyle is a Las Vegas, Nevada

1

consortium, formed for the purpose of land acquisition and development. Kyle's member companies consist of a land developer (defendant Focus Kyle Group, LLC), the six homebuilder companies named as defendants herein, and additional related entities referred to but not sued herein because they are in bankruptcy (Kimball Hill Homes Nevada, Inc. together with its parent company guarantor Kimball Hill, Inc., and Woodside Group, Inc., the parent guarantor for defendant Alameda Investments, Inc.). Kyle's member companies, as well as a respective "parent guarantor" for each member company (also named as defendants herein) each severally guarantied to Wachovia, as Administrative Agent for the benefit of certain lenders under a Credit Agreement, the performance and completion of Kyle's obligations to develop and construct a Nevada real estate project, and also guarantied payment of a portion of Kyle's obligations as the borrower under the Credit Agreement. Defendants' liability upon their Completion Guaranties has been triggered by Kyle's defaults in payment and performance under the Credit Agreement. As the designated Administrative Agent for the lenders under the Credit Agreement, Wachovia sues to enforce the defendants' "Completion Obligations", as defined under the Completion Guaranties, and to recover damages due to defendants' breach thereof.

**THE PARTIES**

2. Wachovia is a national banking association duly organized and existing under and by virtue of the laws of the United States of America, maintaining its principal place of business in the State of North Carolina and authorized to conduct the business of banking in the State of New York.

3. At all relevant times hereinafter mentioned, defendant Focus Kyle Group, LLC ("Focus Kyle") was and still is a limited liability company organized and existing under the laws of the State of Nevada, maintaining its principal place of business at 3455 Cliff Shadows

Parkway, Las Vegas, Nevada.

4. At all times hereinafter mentioned, defendant John A. Ritter was and still is a resident of the State of Nevada, or of a state other than North Carolina.

5. At all relevant times hereinafter mentioned, defendant KB Home Nevada, Inc. ("KB Nevada") was and still is a corporation organized and existing under the laws of the State of Nevada, maintaining its principal place of business at 5655 Badura Avenue, Las Vegas, Nevada.

6. At all relevant times hereinafter mentioned, defendant KB Home ("KB") was and still is a corporation organized and existing under the laws of the State of Delaware, maintaining its principal place of business at 10990 Wilshire Boulevard, Los Angeles, California.

7. At all relevant times hereinafter mentioned, Kimball Hill Homes Nevada Inc. ("Kimball Nevada") was and still is a corporation organized and existing under the laws of the State of Nevada, maintaining its principal place of business at 8 Sunset Way, Henderson, Nevada. Kimball Nevada is not sued herein as a defendant as it has filed as a Debtor under Chapter 11 of the Bankruptcy Code on April 23, 2008 in the U.S. Bankruptcy Court for the Northern District of Illinois.

8. At all relevant times hereinafter mentioned, Kimball Hill, Inc. ("Kimball") was and still is a corporation organized and existing under the laws of the State of Illinois, maintaining its principal place of business at 5999 New Wilke Road, Rolling Meadows, Illinois. Kimball is not sued herein as a defendant as it has filed as a Debtor under Chapter 11 of the Bankruptcy Code on April 23, 2008 in the U.S. Bankruptcy Court for the Northern District of Illinois. 9. At all relevant times hereinafter mentioned, defendant Lennar Communities Nevada, LLC ("Lennar Nevada") was and still is a limited liability company organized and

existing under the laws of the State of Nevada, maintaining its principal place of business at 2920 N. Green Valley Parkway, Henderson, Nevada.

10. At all relevant times hereinafter mentioned, defendant Lennar Corporation ("Lennar") was and still is a corporation organized and existing under the laws of the State of Delaware, maintaining its principal place of business at 25 Enterprise, Alio Viejo, California.

11. At all relevant times hereinafter mentioned, defendant MTH-Homes Nevada, Inc. ("MTH Nevada") was and still is a corporation organized and existing under the laws of the State of Arizona, maintaining its principal place of business at 555 West Badura Avenue, Las Vegas, Nevada.

12. At all relevant times hereinafter mentioned, defendant Meritage Homes Corporation ("Meritage") was and still is a corporation organized and existing under the laws of the State of Maryland, maintaining its principal place of business at 8501 East Princess Drive, Scottsdate, Arizona.

13. At all relevant times hereinafter mentioned, defendant PN II, Inc. ("PN II") was and still is a corporation organized and existing under the laws of the State of Nevada, maintaining its principal place of business at 1635 Village Center Circle, Las Vegas, Nevada.

14. At all relevant times hereinafter mentioned, defendant Pulte Homes, Inc. ("Pulte") was and still is a corporation organized and existing under the laws of the State of Michigan, maintaining its principal place of business at 100 Bloomfield Hills Parkway, Bloomfield, Michigan.

15. At all relevant times hereinafter mentioned, defendant Ryland Homes Nevada, LLC ("Ryland Nevada") was and still is a limited liability company organized and existing under the laws of the State of Delaware, maintaining its principal place of business at 24025 Park

Sorrento, Calabass, California.

16. At all relevant times hereinafter mentioned, defendant The Ryland Group, Inc. ("Ryland") was and still is a corporation organized and existing under the laws of the State of Maryland, maintaining its principal place of business at 24025 Park Sorrento, Calabass, California.

17. At all relevant times hereinafter mentioned, defendant Coleman-Toll Limited Partnership ("Coleman-Toll") was and still is a limited partnership organized and existing under the laws of the State of Nevada, maintaining its principal place of business at 1140 Town Center Drive, Las Vegas, Nevada.

18. At all relevant times hereinafter mentioned, defendant Toll Brothers, Inc. ("Toll Brothers") was and still is a corporation organized and existing under the laws of the State of Delaware, maintaining its principal place of business at 250 Gibraltar Road, Horsham, Pennsylvania.

19. At all relevant times hereinafter mentioned, defendant Alameda Investments, LLC ("Alameda") was and still is a limited liability company organized and existing under the laws of the State of Delaware, maintaining its principal place of business at 39 East Eagleridge Drive, North Salt Lake, Utah.

20. At all relevant times hereinafter mentioned, Woodside Group, Inc. ("Woodside") was and still is a corporation organized and existing under the laws of the State of Nevada, maintaining its principal place of business at 39 East Eagleridge Drive, North Salt Lake, Utah. Woodside Group, Inc. is not sued herein as a defendant as it is a Debtor under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Central District of California (In re Woodside Group, LLC, Case No. 08-20682).

**JURISDICTION AND VENUE**

21.     This Court has diversity of citizenship jurisdiction over the claims and causes of action asserted by Wachovia in this action pursuant to 28 U.S.C. § 1332(a) and (c), in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between plaintiff and all defendants.

22.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a) and (c).

23.     In addition, pursuant to the Credit Agreement and Completion Guaranties more fully described below, defendants have consented to both jurisdiction and venue in this District.

**FACTS COMMON TO ALL CAUSES OF ACTION**

24.     In or about 2005, Kyle was formed in order to provide a vehicle for its members to make a joint bid at a U.S. Bureau of Land Management land auction for 1,712 acres of undeveloped land in Las Vegas, Nevada (the "Property"), for the purpose of developing a master planned community on the Property. Kyle was organized to acquire the subject Property, to plan and construct the major community infrastructure, and to develop and construct building construction pads on the Property, so that Kyle's individual members could then acquire the building lots and construct homes and other improvements on the Property for sale to the public.

25.     The members of Kyle consist of defendant Focus Kyle, a private land developer, and its eight separate merchant homebuilders, which are the defendants KB Nevada, Lennar Nevada, MTH Nevada, PN II, Ryland Nevada, Coleman-Toll, Alameda, and the non-party Chapter 11 debtor Kimball Nevada (hereinafter collectively referred to at times as the "Members").

26.     The Members were and are responsible for contributing certain necessary capital and other funds to Kyle, and each Member entered into acquisition agreements with Kyle to

acquire their proportionate share of the subject Property based upon their respective ownership percentages.  As disclosed to Wachovia, the ownership of Kyle by its Members is set forth as follows:

| **Member** | **Gross Acreage** | **Ownership Percentage** |
|---|---|---|
| Focus Kyle | 393.83 | 22.98% |
| Coleman-Toll | 256.68 | 15.00% |
| Lennar Nevada | 225.85 | 13.19% |
| PN II | 205.31 | 12.00% |
| KB Nevada | 175.34 | 10.24% |
| Kimball Nevada | 164.21 | 9.59% |
| Alameda | 164.21 | 9.59% |
| MTH Nevada | 70.03 | 4.09% |
| Ryland | 56.85 | 3.32% |

27.     Kyle was the successful bidder for the subject Property at the above referenced U.S. Bureau of Land Management auction, in the amount of $510,000,000.

28.     In order to fund the acquisition and certain stages and portions of the development of the Property, the Members and Kyle engaged Wachovia, as Administrative Agent, to arrange for an initial amount of $490 million in certain senior secured credit facilities (the "Facilities") to be made available to Kyle from various lenders (the "Lenders").  Wachovia then arranged to and did obtain the Lenders to fund the Facilities.

29.      On or about June 20, 2005, Kyle, as Borrower, entered into a Credit Agreement with Wachovia, as Administrative Agent for the Lenders.  A true and complete copy of the Credit Agreement is annexed hereto as Exhibit "1" and made a part hereof.

30.     On or about November 8, 2006, Kyle, as Borrower, and Wachovia, as Administrative Agent for the Lenders, entered into a First Amendment to the Credit Agreement,

which extended, modified and increased the Facilities in the Credit Agreement to $565 million. A true and complete copy of the First Amendment to Credit Agreement is annexed hereto as Exhibit "2" and made a part hereof (hereinafter the Credit Agreement and the First Amendment to Credit Agreement are collectively referred to as the "Credit Agreement").

31. The Credit Agreement, among other things, provides for credit Facilities to be made available by the Lenders to Kyle. The Facilities provided under the Credit Agreement were as follows:

> **Facility A** – A four year revolving loan with a maturity date of July 21, 2009 (extended one year from the original maturity date of July 21, 2008) of up to $200,000,000 (increased from the original limit of $125,000,000) to be advanced from time to time to fund a portion of the ongoing development, financing and other costs of the Borrower, including interest expenses and loan fees associated with the credit facility ("Development-Related Costs"). Facility A also contains a sub-facility for the issuance of letters of credit to be available in the amount of $30,000,000, which letters of credit may be issued with maturities of up to one year, renewable annually thereafter, but shall not extend beyond the Facility A maturity date.
>
> **Facility B –** A four year term loan with a maturity date of July 21, 2009 (extended one year from the original maturity date of July 21, 2008) in the amount of $200,000,000 which was fully advanced to the Borrower on the original closing date for the Credit Agreement.
>
> **Facility C-** A six year term loan with a maturity date of July 21, 2011 (extended one year from the original maturity date of July 21, 2010) in the amount of $165,000,000 which was fully advanced to the Borrower on the original closing date for the Credit Agreement.

32. In addition to the above Credit Agreement, Kyle also executed certain other agreements and documents in favor of Wachovia, as Administrative Agent for the Lenders, in connection with the Credit Agreement, including a Nevada First Deed of Trust dated July 14, 2005 and effective July 20, 2005 (the "First Deed of Trust"), which provided Wachovia with a

security interest and lien encumbering the Nevada Property, as well as all improvements existing or to be made or constructed thereon.

33. In consideration for, and as an inducement to, the Lenders providing the extensions of credit and other financial accommodations to Kyle, as evidenced by the Credit Agreement, the Members, and their parent companies (hereinafter the "Parent Guarantors") made, executed and delivered certain guaranties in favor of Wachovia, as Administrative Agent for the Lenders, including, but not limited to, certain Completion Guaranties under which the Members and their Parent Guarantors guarantied and agreed to pay and perform certain of Kyle's liabilities and obligations, as more fully provided therein, including the obligation to develop the Project and complete the construction of the Improvements required under the Credit Agreement for the Project, and to pay the Development Costs (as defined in the Credit Agreement) thereunder.

34. The Completion Guaranties include, without limitation, the Completion Guaranty of Member Focus Kyle and its Parent Guarantor, John A. Ritter, dated July 20, 2005, the Completion Guaranty of Member KB Nevada and its Parent Guarantor, KB, dated July 20, 2005, the Completion Guaranty of Member Kimball Nevada and its Parent Guarantor, Kimball, dated July 20, 2005, the Completion Guaranty of Member Lennar Nevada and its Parent Guarantor, Lennar, dated July 20, 2005, the Completion Guaranty of Member MTH Nevada and its Parent Guarantor, Meritage, dated July 20, 2005, the Completion Guaranty of Member PN II and its Parent Guarantor, Pulte dated July 20, 2005, the Completion Guaranty of Member Ryland Nevada and its Parent Guarantor, Ryland, dated July 20, 2005, the Completion Guaranty of Member Coleman-Toll and its Parent Guarantor, Toll Brothers, dated July 20, 2005, and the Completion Guaranty of Member Alameda and its Parent Guarantor, Woodside, dated July 20,

2005 (collectively the "Completion Guarantors" and the "Completion Guaranties"). Copies of the Completion Guaranties, as well as defendants' Reaffirmation and Amendment to the Completion Guaranties dated as of November 8, 2006, are collectively annexed hereto as Exhibit "3" and made a part hereof.

35. The Completion Guaranties set forth certain completion obligations of the Completion Guarantors (the "Completion Obligations"), which include, in pertinent part, as follows:

> Section 1. **Defined Terms**.
>
> (a) "Completion Obligations" means, without duplication, (1) Borrower's obligation to diligently commence, continue and complete, and to pay the Guaranteed Development Costs incurred with respect to, the construction of the Improvements on the Project without material interruption or cessation of work in a good and workmanlike manner with materials of good quality, free of liens (other than Permitted Encumbrances) and free of material defects, all in accordance with the Approved Plans and Specifications therefor, all Requirements of Law, including all requirements and conditions set forth in all Permits which have been obtained or are required to be obtained for the construction of the Improvements, the Approved Project Schedule and the terms and provisions of the Acquisition Agreements and the Development Agreement, (ii) Borrower's Obligation to make Balancing Payments pursuant to the Credit Agreement and (iii) Borrower's obligation to pay any and all LC Disbursements.

Completion Guaranty, Exhibit "3".

36. The Completion Guaranties also provide further agreements made by the Completion Guarantors, including, but not limited to:

> Section 2. **Guaranty**.
>
> (a) The Guarantor does hereby absolutely, irrevocably and unconditionally, jointly and severally, as primary obligor and not as surety, guarantee and agree to pay and perform, upon demand by the Administrative Agent, for the benefit of the Lenders and the other Holders of Secured Obligations, but without duplication of the Guarantor's

> Obligations under any other Guaranty, the Member Guarantor's Adjusted
> Pro Rata Share of any and all Completion Obligations not paid or
> performed by the Borrower, which payment shall be due and payable by
> the Guarantor, notwithstanding whether allowed or allowable due in
> pendency of any bankruptcy, insolvency, receivership or other similar
> proceeding.  The obligations of the Guarantor hereunder shall not be
> reduced by the amounts paid by other guarantors.   This Guaranty is a
> guaranty of payment and not of collection only.  The Administrative
> Agent shall not be required to exhaust any right or remedy or take any
> action against the Borrower, any other guarantor or any other Person
> obligated for all or any part of the Completion Obligations or other
> Obligations, or otherwise to enforce its payment against any Collateral
> securing all or any part of the completion obligations or other Obligations.
>  The Guarantor agrees that, as between the Guarantor and the
> Administrative Agent, the Lenders and any other Holders of Secured
> Obligations, the Completion Obligations may be declared to be due and
> payable for the purposes of this Guaranty notwithstanding any stay,
> injunction or other prohibition which May prevent, delay or vitiate any
> declaration as regards the Borrower and that in the event of any such
> declaration or attempted declaration, the Completion Obligations shall
> immediately become due and payable by the
> Guarantor for the purposes of this Guaranty.
>
> \* \* \*
>
> (c) In furtherance, but without duplication, of the provisions of
> paragraph (a) above, Guarantor hereby further agrees on demand
> to pay to and to reimburse the Administrative Agent, Lenders and
> Holders of Secured Obligations, for the Member Guarantor's Adjusted
> Pro Rata Share of any and all Guaranteed Development Costs incurred
> by the Administrative Agent or any Lender or Holder of Secured
> Obligations.

Completion Guaranty, Exhibit "3".

  37. Kyle has defaulted on its Obligations (as defined under the Credit Agreement).

Specifically, but without limitation, one or more events of default exist under Section 9.01(b) of

the Credit Agreement in that Kyle has failed to make payments on its Obligations when due

thereunder, and Kyle has also failed to perform its obligation to commence, continue and

complete the development and construction of the Improvements on the Project, as such capitalized terms are defined in the Credit Agreement.

38. As a result of Kyle's defaults under the Credit Agreement, Wachovia, as Administrative Agent for the Lenders, commenced a Nevada non-judicial foreclosure proceeding upon its First Deed of Trust against the Property. The Property was duly sold pursuant to a public foreclosure sale held on September 23, 2008, and the Property was acquired through a bid made on behalf of Wachovia as Administrative Agent for the Lenders.

39. Notifications of default have been given and demands made by Wachovia, as Administrative Agent for the Lenders, for payment and performance by the Completion Guarantors under their Completion Guaranties of any and all Completion Obligations not paid or performed by Kyle as the Borrower, including, without limitation, to develop and construct the required Improvements on the Project and to pay all Guaranteed Development Costs, Balancing Payments, and Covered Interest Costs, as defined therein.

40. Despite due demand, the Completion Guarantors have failed to pay or perform their Completion Obligations under the Completion Guaranties and are in breach thereof.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

41. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "40", inclusive, of this Complaint with the same force and effect as though set forth at length herein.

42. By virtue of the Kyle's default under the Credit Agreement, the defendant Completion Guarantors are severally liable upon their Completion Guaranties for the payment and performance of each Member Guarantor's adjusted pro-rata share of any and all Completion Obligations (as defined therein) not paid or performed by Kyle as the Borrower (the several pro rata shares for each Member Guarantor and corresponding Parent Guarantor is set according to each Member's ownership percentage of Kyle, as listed above in paragraph 26).

43. By virtue of the foregoing, defendants are severally liable and indebted to Wachovia, as Administrative Agent for the benefit of the Lenders, upon their respective Completion Guaranties, for all sums necessary to perform the Completion Obligations, in an amount to be proven in this action, to the extent of each defendant's adjusted pro-rata share of the Completion Obligations, and also to make those payments of, <u>inter alia</u>, Guaranteed Development Costs, as defined and required of defendants under their Completion Guaranties, which Guaranteed Development Costs defendants previously projected as exceeding $358 million, together with interest thereon, and all other sums due and owing as set forth in the Completion Guaranties.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS**

44. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "43", inclusive, of this Complaint with the same force and effect as though set forth at length herein.

45. At the time of Kyle's default under the Credit Agreement, and continuing to date, the Improvements to the Property required under the Credit Agreement have not been constructed or completed by Kyle or by the Completion Guarantors.

46. By virtue of Kyle's default under the Credit Agreement, the defendant Completion Guarantors, are liable to Wachovia, as Administrative Agent for the benefit of the Lenders, upon defendants' Completion Guaranties, for damages as a result of defendants' breach of their Completion Guaranties, in an amount to be proven in this action, and including, but not limited to, damages based upon the diminished value of the Property caused by defendants failure to make the Improvements required to be made under the Credit Agreement("Improvements" being defined in the Credit Agreement as including infrastructure improvements to be constructed or installed on the Property by Kyle).

47. The value of the Property without the Improvements is substantially less than the amounts currently due and owing on the Facilities outstanding under the Credit Agreement, and as a result the Obligations owed to Wachovia as Administrative Agent for the benefit of the Lenders are not fully secured by the Property.

48. By virtue of the foregoing, defendants are severally indebted to Wachovia, as Administrative Agent for the benefit of the Lenders, upon their Completion Guaranties, for damages to be proven in this action, including, but not limited to, damages based upon the defendants' breach of their Completion Guaranties, and damages based upon the diminished value of the Property without the Improvements required under the Credit Agreement, to the extent of each defendant's several adjusted pro-rata share, together with appropriate interest thereon.

## AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

49. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "48", inclusive, of this Complaint with the same force and effect as though set forth at length herein.

50. In addition to the obligations of the Completion Guarantors to commence, continue and complete the construction of the Improvements on the Project (as defined in the Credit Agreement), the Completion Obligations further require the Completion Guarantors to make certain payments to the Lenders. Specifically, the "Completion Obligations" provide for payment from the Completion Guarantors as follows:

> Section 1. **Defined Terms**.
>
> (a) "Completion Obligations" means, without duplication, (1) Borrower's obligation to … pay the Guaranteed Development Costs incurred with respect to, the construction of the Improvements on the Project…(ii) Borrower's Obligation to make Balancing Payments pursuant to the Credit Agreement and (iii) Borrower's obligation to pay any and all LC Disbursements; provided, however, the Completion Obligations shall not include any obligation to pay Guaranteed Developments Costs (including, without limitation, interest) incurred subsequent to the completion of the Improvements except for Guaranteed Development Costs incurred or accruing through the date of such completion (whether or not payable thereafter). Except as specifically provided in Section 1(b) below, for the purposes of this Guaranty, the Improvements shall be deemed complete only if the conditions to completion set forth in Section 5.18(a) of the Credit Agreement have been satisfied.

51. Under defendants' Completion Guaranties, defendants unconditionally guaranteed payment of all Guaranteed Development Costs, Covered Interest Costs, Balancing Payments, and LC Disbursements (Exhibit "3", Section 1(d)).

52. "Covered Interest Costs" are defined in the Completion Guaranties, in

pertinent part, as follows:

> SECTION 1 (b) "Covered Interest Costs" means interest at the non-default rate accrued or accruing on the Loans and LC Disbursements through the date on which the Improvements are substantially complete (it being understood that, for these purposes, the Improvements shall be deemed substantially complete only if the conditions set forth in Section 5.18(b) of the Credit Agreement have been satisfied)

The conditions set forth in Sections 5.18(a) and 5.18(b) of the Credit Agreement have not been satisfied, in that, among other things, the Improvements have not been constructed, completed or substantially completed.

53. A "Balancing Payment" is defined in the Credit Agreement as follows:

> SECTION 5.09. <u>Loan Balancing</u>. In the event the Administrative Agent determines in its reasonable judgment that the Development Costs to be incurred through the completion of construction of the Improvements, sale of all Phases and repayment of all Secured Obligations, will at any time exceed by $2,500,000 (or more) the amount provided for in the Approved Project Budget, an "<u>Out-of-Balance Condition</u>" (hereby so defined) shall be deemed to exist. Within ten (10) Business Days after Borrower has received written notice from Administrative Agent of such Out-of Balance Condition (a "<u>Balancing Notice</u>"), Borrower shall either pay to the Administrative Agent for deposit into a Cash Collateral Account the amount specified in the Balancing Notice (each such deposit being herein referred to as a "<u>Balancing Payment</u>"), or in lieu thereof deliver to the Administrative Agent a Qualified Letter of Credit in such amount, which deposit or delivery shall be deemed to cure the Out-of-Balance Condition.

54. As a result of the defaults by Kyle, the Completion Guarantors, and the defendants in their respective payment and performance obligations under the Credit Agreement and Completion Guaranties, the Project's Development Costs continue to increase; an "Out-of-Balance Condition" (as defined above) results and/or will result under the Credit Agreement, and demand is and has been made for payment to cure such Out-of-Balance Condition

55. Development Costs as defined under the Credit Agreement include "all interest payments on the Loans," as defined in Section 1.01 of the Credit Agreement. The overdue and

accruing interest payments required to be made on the Loans under the Credit Agreement have contributed and will continue to contribute to an Out-of-Balance Condition, together with overdue and accruing "real estate taxes, insurance premiums and other carrying costs for the Project" (all included as Development Costs in the Credit Agreement) and other outstanding and accruing Development Costs, all of which are required to be paid by defendants as part of the Completion Guarantors' obligation to pay the Balancing Payments due under the Credit Agreement.

56. Pursuant to the terms of the Completion Guaranties, and as a result of the Improvements not having been constructed, completed or substantially completed, all Completion Obligations of the Completion Guarantors for all Guaranteed Development Costs, Covered Interest Costs, LC Disbursements and Balancing Payments are due and will continue to accrue and become due with interest thereon, all of which is due and owing from the Completion Guarantors, to the extent of each defendant's adjusted pro-rata share of the Completion Obligations.

57. By virtue of the foregoing, defendants are severally indebted to Wachovia, as Administrative Agent for the benefit of the Lenders, upon their respective Completion Guaranties, for, <u>inter alia</u>, the Guaranteed Development Costs, Covered Interest Costs, LC Disbursements and Balancing Payments, which now are due or which hereafter may accrue or become due under the Credit Agreement and Completion Guaranties, to the extent of each defendant's adjusted pro-rata share of the Completion Obligations.

### **AS AND FOR A FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**

58. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "57", inclusive, of this Complaint with the same force and effect as though set forth at length herein.

59. The Completion Guaranties provide, in pertinent part, that:

> SECTION 14. **Expenses.**  The Guarantor shall reimburse the Administrative Agent on demand for all costs, expenses and charges (including without limitation fees and charges of external legal counsel for the Administrative Agent and costs allocated by its internal legal department) incurred by the Administrative Agent in connection with the performance or enforcement of this Guaranty.  The obligations of the guarantor shall survive the termination of this Guaranty.

60. By virtue of the foregoing, defendants are severally and pro-rata liable for all costs and expenses incurred by plaintiff, including, but not limited to, plaintiff's attorneys' fees, plaintiff's costs related to enforcement of defendants' Completion Guaranties, and the costs and disbursements of this action.

WHEREFORE, plaintiff Wachovia Bank, National Association, as Administrative Agent for the benefit of the Lenders under the Credit Agreement, demands judgment against the defendants, as follows:

(i) On the First Cause of Action, against all defendants for all sums due and owing on the defendants' Completion Obligations, severally, to the extent of each defendant's adjusted pro-rata share of the Completion Obligations, together with appropriate interest thereon, and other sums due and owing as set forth in the Completion Guaranties, all of which are estimated to exceed $358 million.

(ii) On the Second Cause of Action, against all defendants for damages, including, but not limited to, damages resulting from the defendants' breach of their Completion Guaranties, and also damages due to the diminished value of the

Property without the Improvements required under the Credit Agreement, severally, to the extent of each defendant's adjusted pro-rata ownership share of the Completion Obligations, together with appropriate interest thereon.

(iii) On the Third Cause of Action, against all defendants, for all Guaranteed Development Costs, Covered Interest Costs, LC Disbursements and Balancing Payments which are due or may accrue and become outstanding, to the extent of each defendant's adjusted pro-rata share of the Completion Obligations;

(iv) On the Fourth Cause of Action, against all defendants, for plaintiff's costs and expenses of enforcement, including, but not limited to, reasonable attorneys' fees;

(v) On all Causes of Action, for the costs and disbursements of this action and such other and further relief in favor of plaintiff as this Court may deem appropriate under the circumstances.

Dated: New York, New York
October 10, 2008

ROSNER NOCERA & RAGONE, LLP

By:_____/S/_____
John A. Nocera (JN 3399)
Peter A. Ragone (PR 6714)
Anthony L. Cotroneo (AC 0361)
Attorneys for Plaintiff
  Wachovia Bank National Association,
  as Administrative Agent
110 Wall Street, 23rd Floor
New York, New York 10005
(212) 635-2244

Toni/files/kylecomplaintfinal (word)